IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-03113-RBJ

JAMES DURWARD,

    Plaintiff,

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST,

    Defendant.

## ORDER

Defendant moves to dismiss plaintiff's First, Third, and Fourth Claims for Relief and to strike plaintiff's demand for a jury trial. Both motions are granted.

## FACTS

The plaintiff, James Durward, owns a commercial building in Estes Park, Colorado. In September 2013 the building was damaged by flooding. Mr. Durward submitted a claim under a Standard Flood Insurance Policy ("SFIP"). The defendant, Hartford Insurance Company of the Midwest, which administered the SFIP, denied the majority of the claim, citing a limitation of coverage for damage to items in a basement. The coverage dispute is whether the property has a basement as that term is defined in the SFIP.

Dr. Durward brought this suit alleging claims for (1) a declaratory judgment as to coverage, (2) breach of contract, (3) bad faith breach of insurance contract, a tort recognized in Colorado common law, and (4) a statutory penalty under a Colorado statute, C.R.S. § 10-3-1116.

1

The Third Claim asserts that Hartford engaged in a number of unfair claims handling practices, i.e., inadequate communication, inadequate investigation, inadequate efforts to effectuate a prompt and fair settlement, inadequate justification of its coverage decisions, and ultimately unreasonable delay and denial of coverage. The Fourth claim also asserts unreasonable delay or denial of the insurance benefit.

In the pending motion Hartford argues that the declaratory judgment claim is unnecessary, because coverage will be resolved by the breach of contract claim; and that the state law bad faith claims are preempted by the National Flood Insurance Act and federal regulations issued pursuant to the Act.

## THE NATIONAL FLOOD INSURANCE ACT

The National Flood Insurance Act, 42 U.S.C. § 4001 et seq., was enacted by Congress in 1968 to make affordable flood insurance available on a national basis. The Act, referred to herein as the NFIA, created the National Flood Insurance Program, which is administered by the Federal Emergency Management Agency ("FEMA"). Insurance coverage under this program is provided through the SFIP, a uniform, standard-form insurance contract. 44 C.F.R. pt. 61, app. A(1) (2014). FEMA can issue and administer SFIP's itself. However, FEMA also created a "Write-Your-Own" or "WYO" program whereunder private insurance companies are authorized to issue and administer SFIP's. Mr. Durward purchased his SFIP coverage from Hartford acting as a WYO company.

A WYO company is a fiscal agent of the United States. 42 U.S.C. § 4071(a)(1). FEMA bears the risk and is responsible for the ultimate payment of claims using U. S. Treasury funds, not the WYO company's funds. 42 U.S.C. § 4017(d)(1). The WYO company collects

premiums, adjusts claims, and issues the payments on covered claims. It cannot waive, alter or amend any of the provisions of the SFIP. 44 C.F.R. § 61.13(d) (2014).

FEMA amended the SFIP in 2000 to provide, "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law." 44 C.R.S. pt. 61, app. A(2), art. IX.

## CONCLUSIONS

**A. Motion to Dismiss.**

1. First Claim: Declaratory Judgment.

The First Claim appears to serve no useful purpose in this case. Plaintiff seeks a declaration "as to the extent of Defendant's obligation to provide coverage to Plaintiff under the Policy for the foregoing property damage and related losses." ECF No. 1 at ¶39. In plaintiff's Second Claim, seeking damages for breach of contract, plaintiff alleges that "Defendant failed to perform under the Policy, in that it failed to provide coverage for the foregoing property damage and other losses." *Id.* at ¶42. It seeks damages caused by the breach. Thus, in resolving the Second Claim, the Court necessarily will resolve the coverage issue.

Mr. Durward suggests that a declaratory judgment would serve judicial economy by precluding future litigation over SFIP coverage for the first floor of his building in the event it is again subjected to flooding. As Hartford's motion comments, however, the primary dispute is whether the property has a "basement." That is a defined term in the SFIP, and the Court will determine whether the first floor is or is not a "basement" in deciding coverage and possible damages. I do not understand how the Court's resolution of the contract claim would leave

anything unresolved that would be resolved by a declaratory judgment. Therefore, while it probably can be said that leaving the First Claim in the case would do no harm, it also does no good. It is substantively redundant.

2. Third and Fourth Claims: Bad Faith.

The issue is whether these state law claims are preempted by the NFIA. This is by no means the first case to address that issue. Based on the parties' briefs and my own research, it appears that seven circuit courts have addressed that issue, and each one has answered the question affirmatively. *See Gunter v. Farmers Ins. Co., Inc.,* 736 F.3d 768, 772 (8th Cir. 2013) (claims for unjust enrichment and bad faith); *Remund v. State Farm Fire and Casualty Company,* 483 F.App'x 403, 407-08 (10th Cir. 2012) (unpublished) (estoppel and breach of warranty); *Shuford v. Fidelity Nat. Property & Cas. Ins. Co.,* 508 F.3d 1337, 1344 (11th Cir. 2007) (bad faith); *Wright v. Allstate Ins. Co.,* 415 F.3d 384, 389-90 (5th Cir. 2005) (statutory and common law bad faith, fraud, negligent misrepresentation); *Pecarovich v. Allstate Ins. Co.,* 135 F.App'x 23, 25 (9th Cir. 2005) (unpublished) (bad faith, punitive damages, interest); *C.E.R. 1988, Inc. v. The Aetna Casualty and Surety Co.,* 386 F.3d 263, 269-71 (3rd Cir. 2004) (negligent adjustment, bad faith, outrageous and reckless conduct); *Gibson v. American Bankers Ins. Co.,* 289 F.3d 943, 948-50 (6th Cir. 2001) (unfair claims settlement statute).

The circuit decisions do not necessarily rely on the same theory of preemption. Federal law can preempt state law in three different ways: express preemption (Congress explicitly preempts state law); field preemption (Congress intended to occupy the field and therefore impliedly preempts state law); and conflict preemption (state law conflicts with federal law). *See English v. General Elec. Co.,* 496 U.S. 72, 78 (1990). At least two circuits have found express

preemption by the language FEMA added to the SFIP in 2000 (quoted above). *Gunter,* 736 F.3d at 772; *Shuford,* 508 F.3d at 1344. This language "was added to ensure uniform interpretation of SFIP and to clarify that 'matters pertaining to the [SFIP], including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law.'" *Gunter,* 736 F.3d at 772. *See also Wright,* 415 F. 3d at 390; *C.E.R 1988,* 386 F.3d at 269 n.6 (arguably the 2000 amendment to the SFIP expressly preempts state law claims). The Third, Fifth, Ninth and Tenth Circuits found conflict preemption. *C.E.R. 1988,* 386 F.3d at 270-71; *Wright,* 415 F.3d at 390; *Pecarovich,* 135 F.App'x at 25; *Remund,* 483 F.3d at 407-11. The Sixth Circuit appeared to find field preemption. *Gibson,* 289 F.3d at 948-50.

Plaintiff essentially argues that all those cases are wrong. He relies largely on the following provision of § 4081 of the NFIA:

> The Administrator of the Federal Emergency Management Agency shall hold any agent or broker selling or undertaking to sell flood insurance under this chapter harmless from any judgment for damages against such agent or broker as a result of any court action by a policyholder or applicant arising out of an error or omission on the part of the Federal Emergency Management Agency, and shall provide any such agent or broker with indemnification, including court costs and reasonable attorney fees, arising out of and caused by an error or omission on the part of the Federal Emergency Management Agency and its contractors. *The Administrator of the Federal Emergency Management Agency may not hold harmless an agent or broker for his or her error or omission.* (emphasis added)

42 U.S.C. § 4081(c).

One could infer that Congress therein recognized that WYO companies might incur state law liability for errors or omissions in the procurement of SFIP policies or in handling claims. If so, then the statute immunizes FEMA and the U.S. Treasury from responsibility for such liability. As plaintiff points out, this inference is not without support in the case law. *See, e.g., Gibson,* 289 F.3d at 951 (Moore, J, dissenting); *Bleeker v. Standard Fire Ins. Co.,* 130 F. Supp.

5

2d 726, 734 (E.D. N.C. 2000); *Davis v. Travelers Prop. & Cas. Co.,* 96 F. Supp. 2d 995, 1002 (N.D. Cal. 2000).[1]

I am, of course, particularly interested in the Tenth Circuit's views as expressed in the *Remund* case. A creek ran directly beneath Remund's cabin. The cabin rested on concrete piers, and the flow of the creek was directed by rock channel walls. When he purchased a SFIP the State Farm agent assured him that it would cover damage to his property caused by high spring runoff from the creek. However, when rising water levels damaged the channel walls and began to undermine the structural support of the cabin, State Farm denied coverage. Remund sued State Farm, asserting claims of breach of contract, breach of warranty, estoppel and bad faith. Remund ultimately stipulated that the SFIP did not cover the damage, and he voluntarily dismissed the breach of contract and bad faith claims. He pressed the warranty and estoppel claims based on the agent's representation that the policy would provide coverage against such damage.

Although the parties characterized Remund's claims as "policy-procurement" claims, the court disregarded the label and compared "the elements of the state-law claims to the mandates of federal law." 483 F.App'x at 406. Under Utah law, insurers can be estopped to deny coverage when an insured relies to his detriment on inaccurate representations by an agent as to the scope of coverage. Also, a warranty by one party to a contract of the existence of a fact that induces reliance amounts to a promise to respond in damages proximately caused by the

---

[1] There are also a number of district court decisions finding preemption. *E.g., Scherz v. S. Car. Ins. Co.,* 112 F. Supp. 2d 1000, 1008 (C.D. Cal. 2000); *Neill v. State Farm Fire & Cas. Co.,* 159 F. Supp. 2d 770, 776-77 (E.D. Pa. 2000). There are also district court decisions that distinguish between claims arising out of the procurement of a policy (not preempted) and claims arising out of the handling of claims (preempted). *E.g., Padallino v. Standard Fire Ins. Co.,* 616 F. Supp. 538, 543-46 (E.D. Pa. 2008); *TAF, LLC v. Hartford Fire Ins. Co.,* 549 F. Supp.2d 1282, 1288, 89 (D. Colo. 2008).

nonexistence of the fact.  The court concluded that both claims were preempted under the conflict preemption doctrine:

> In performing this preemption inquiry here, we need look no further than one of the NFIP's implementing regulations, which states:
>
> "[R]epresentations regarding the extent and scope of coverage [under the SFIP] which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the [insurance] agent *acts for the insured* and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the [WYO carrier]."

*Id.* at 408 (citing 44 C.F.R. § 61.5(e) (emphasis in original).

Plaintiff notes that, as an unpublished case, *Remund* is not binding precedent.  True, but a decision of the Tenth Circuit, binding or not, is persuasive in this Court.  Plaintiff also argues that *Remund* is distinguishable because the tort claims in the present case are "very different from the Utah statutes analyzed by the *Remund* court."  ECF No. 28 at 12.  The substantive difference is that *Remund* arose from the insured's claim of misrepresentation that occurred when he purchased the policy, whereas the present claim arises from Hartford's denial of Mr. Durward's claim.  That distinction, however, is not particularly helpful to the plaintiff.  As noted above, some district courts have been open to state-law claims arising out of the policy procurement process while finding that claims arising out of the claims handling process are preempted.  *Remund* seems to shut the door on claims that, if anything, would be more likely to withstand a preemption argument.  It is not a major reach to predict that the same Tenth Circuit panel likely would find preemption of claims handling claims, particularly in view of the FEMA's year 2000 amendment of the SFIP which now states clearly that disputes arising from the handling of claims are governed exclusively by the NFIA, the FEMA regulations, and federal common law.

Judge Babcock of this Court came to the same conclusion. The dispute in *TAF,* as it is here, was whether the portion of the damage as to which Hartford denied coverage under the SFIP was to a basement. The court found that that type of dispute is a dispute about the handling of the claim. I agree. The court further found that the insured's state law claims for bad faith, negligence and negligent misrepresentation in the handling of the claim were preempted. 549 F. Supp. 2d at 1289.

I conclude that Mr. Durward's bad faith claims are preempted by the NIFA and FEMA's regulations issued thereunder. First, as indicated, all seven circuits that have addressed the issue, including the Tenth Circuit, have found preemption. Second, the SFIP, which was prepared and issued by FEMA, plainly provides that claims-handling disputes are exclusively governed by federal law.

Section 4081(c) does not convince me otherwise. It disclaims FEMA responsibility for errors or omissions of an agent or broker. It does not expressly contemplate or permit bad faith claims against WYO companies as such. In any event, the SFIP closes that door.[2]

### B. **Motion to Quash Jury Demand**.

Mr. Durward candidly acknowledges that if the Court grants Hartford's motion to dismiss the bad faith claims, then he will have to confess Hartford's motion to quash the jury demand. ECF No. 27 at 1-2. Hartford cites a number of cases, including a Tenth Circuit case and another order in the *TAF* case, to the same effect, i.e., that there is no right to a jury trial on the breach of

---

[2] Hartford raises two additional arguments in its reply brief. First, it argues that manner in which it is compensated gives it a motive to grant rather than to deny claims. ECF No 34 at 2. Second, it notes that in 1999 FEMA provided a declaration in a California case indicating, among other things, that FEMA did not contemplate that state-based tort claims could be brought against WYO companies for actions arising out of the SFIP or the NFIA or FEMA regulations. *Id.* at 7-8; ECF No. 34-1 at ¶9. Because the arguments were raised for the first time in the reply, I disregard them.

contract case against a WYO company acting in its capacity as fiscal agent of the United States. *Sandia Oil Co. v. Beckton,* 889 F.2d 258, 262 (10th Cir. 1989); *TAF, LLC v. Harford Fire Ins. Co.,* No. 60-cv-1822-LTB-BN B, 2007 WL 1346584, at *5 (D. Colo. May 7, 2007).  I agree.

## ORDER

Defendant's motions to quash the jury demand and to dismiss plaintiff's First, Third and Fourth Claims, ECF Nos. 25 and 26, are both GRANTED.

DATED this day 20th day of November, 2015.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge